UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ISMAEL RIVERA PINEDA, | ) | Case No.  CV 13-2877 MRW |
| Plaintiff, | ) | |
| vs. | ) | ORDER VACATING DECISION OF ADMINISTRATIVE LAW JUDGE |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) | |

## I.  SUMMARY OF RULING

Plaintiff Ismael Rivera Pineda challenges the denial of his application for disability insurance benefits.  Plaintiff argues on appeal that the Administrative Law Judge (ALJ) (a) failed to properly consider certain medical evidence and (b) did not state sufficient reasons to reject Plaintiff's testimony regarding his symptoms.

The Court agrees that the ALJ did not adequately address evidence regarding an injury to Plaintiff's brain.  Further, the Court has no basis to conclude that any error in the non-evaluation of that evidence necessarily was harmless.  The Court

also finds that the ALJ's determination of Plaintiff's credibility must be reconsidered. The Court therefore remands the case to the agency for further proceedings.

## II. PLAINTIFF'S CONDITIONS AND PROCEEDINGS BELOW

Plaintiff applied for benefits based on various mental and physical conditions. Following an administrative hearing, the ALJ found that Plaintiff's shoulder tendinitis and depression constituted "severe impairments" as that term is used under federal regulations. (AR 17.) The ALJ also noted that Plaintiff suffered from diabetes.

After considering the medical record and other evidence, the ALJ concluded that Plaintiff had the residual functional capacity (RFC) to perform "light work" with certain limitations, including a non-exertional restriction that Plaintiff perform only "simple routine tasks." (AR 18-19.) A vocational expert testified at the hearing that an individual with Plaintiff's RFC could perform work existing in the national economy. (AR 306-10.) The ALJ concluded that Plaintiff was not disabled and denied benefits.

## III. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision must be upheld if they are supported by substantial evidence and are free of legal error. Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "The Court must uphold the ALJ's conclusion even if the evidence in the record is susceptible to more than one rational interpretation." Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). Indeed, if the record evidence can reasonably support either affirming or reversing the Agency's decision, this Court must not substitute its judgment for that of the ALJ. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). A reviewing court must consider "the entire record as a whole and may not

affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quotation omitted).

Error in a social security determination is subject to harmless error analysis. Ludwig v. Astrue, 681 F.3d 1047, 1054 (9th Cir. 2012). Reversal "is not automatic, but requires a determination of prejudice." Id. Among other things, a reviewing court must consider "the likelihood that the result would have been different" but for the error, and "the impact of the error on the public perception" of the proceeding. Shinseki v. Sanders, 556 U.S. 396, 411-12 (2009). A federal court must conduct this harmless error analysis regardless of the parties' formulations of the claims on appeal: "in each case we look at the record as a whole to determine whether the error alters the outcome of the case." Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) (emphasis added).

### B. ALJ's Analysis of Medical Evidence[1]

Plaintiff finds fault in the ALJ's failure to discuss a physician's findings regarding proof of an injury to Plaintiff's brain that caused "impaired memory and mental functioning." (Docket # 21 at 4.)

In the course of several neurological examinations in late 2010, Plaintiff's treating physician, Dr. Wu (a Board-certified neurologist and psychiatrist), stated that MRI and CT tests showed evidence "consistent with posttraumatic encephalomalacia," "cerebral calcification," and mild atrophy to portions of the brain. (AR 252, 262.) An EEG also showed mild encephalopathy. (AR 265.) Additionally, in his consideration of Plaintiff's medical history, Dr. Wu noted that Plaintiff reported considerable, progressive, and worsening memory loss and other mental symptoms.

---

[1] The Court accepts the government's assertion that, notwithstanding the single claim that Plaintiff presents in the joint moving papers, he really brings two separate challenges to the ALJ's assessment of the medical evidence and the adverse credibility determination.

The ALJ noted this evidence and Dr. Wu's opinions in the written decision. (AR 21.) However, the ALJ did not expressly evaluate the significance of these findings, nor did the ALJ explain whether this information was or was not incorporated into the minimal, non-exertional limitation in Plaintiff's RFC.

### 1. Relevant Law

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record." Robbins v. Social Sec. Admin., 466 F.3d 88, 883 (9th Cir. 2006) (quotations omitted). In addition, an ALJ's findings "must be supported by specific, cogent reasons." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). "The ALJ must set out in the record his reasoning and the evidentiary support for his interpretation of the medical evidence." Tackett, 180 F.3d at 1098. If the ALJ rejects significant probative evidence, the ALJ must explain why. Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984).

Where the record contains evidence of an impairment, it is error for the ALJ not to consider it without providing sufficient explanation.[2] Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996); see also Lingenfelter v. Astrue, 504 F.3d 1028, 1037 n.10 (9th Cir. 2007) ("an ALJ cannot avoid these requirements" by passing references to physicians or their opinions). Further, a federal court "may not uphold an agency's decision on a ground not actually relied upon by the agency." Molina, 674 F.3d at 1120.

Under Social Security Administration regulations, a treating physician's opinion is given controlling weight if it is "well-supported by medically acceptable

---

[2] Plaintiff complains that the ALJ failed to find that his brain condition constituted a "severe impairment" at step two of the sequential analysis. However, because the ALJ found other such impairments and did not dismiss Plaintiff's entire disability claim as groundless, any error at that step was clearly harmless – unless the ALJ improperly failed to consider the impact of that condition in formulating the RFC. Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005).

clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007) (quoting 20 C.F.R. § 404.1527). When a treating physician's opinion is contradicted by another doctor's evaluation, the ALJ "must provide specific and legitimate reasons supported by substantial evidence" for rejecting the treating physician's opinion. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (quotation marks omitted). An ALJ may only reject a treating or examining physician's "uncontradicted medical opinion based on clear and convincing reasons." Carmickle v. Comm'r of Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (quotations omitted). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [his] interpretation thereof, and making findings." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008).

### 2. Analysis

The ALJ briefly recited Dr. Wu's findings regarding Plaintiff's brain trauma in the written decision. However, the ALJ failed to provide <u>any</u> interpretation of that evidence or to expressly explain whether the evidence was or was not relevant to the agency's RFC determination. Instead, in explaining the nominal scope of Plaintiff's mental RFC limitations, the ALJ gave "great weight" to the findings of a consultative examining psychologist (Dr. Case) and a non-examining consultant who reviewed Plaintiff's medical records (Dr. Paxton) without any substantive evaluation of the evidence of Plaintiff's brain injury. (AR 21.)

It is not apparent from the written decision whether the ALJ intended to reject Dr. Wu's evaluation. The potential significance of that evaluation was great, as the objective medical evidence that Dr. Wu developed could plausibly explain Plaintiff's memory-related symptoms and support greater functional restrictions than those stated in the RFC. More importantly, the ALJ failed to identify a legitimate or convincing reason to accept the more limited analyses of Drs. Case

1  and Paxton – whose early- and mid-2010 opinions predate the MRI / CT / EEG
2  evaluations that Dr. Wu conducted – over the medical record as it was later
3  developed.  (Docket # 21 at 23-24.)  Carmickle, 533 F.3d at 1164.
4         As a treating physician whose evaluation of Plaintiff's condition was
5  supported by extensive scientific testing, Dr. Wu's evaluation of Plaintiff would
6  ordinarily be given controlling weight in an agency proceeding.  However, based
7  on the Court's review of the written decision, the ALJ did not assign Dr. Wu's
8  opinion any weight in the RFC process.  The ALJ also provided no reviewable
9  explanation of that decision.  Tommasetti, 533 F.3d at 1041.  Plaintiff's brain
10 trauma appears to have been significant probative evidence which should have
11 been analyzed in the written decision.  It was error for the ALJ not to consider this
12 evidence or to explain why it did not factor into the RFC.  Tackett, 180 F.3d at
13 1098.  Moreover, given the potential centrality of the evidence of organic brain
14 injury to Plaintiff's subjective complaints, the Court cannot find that the ALJ's
15 error necessarily was harmless.  Shinseki, 556 U.S. at 411-12.
16        The government gamely offers several reasons as to why the ALJ might
17 have been entitled to ignore Dr. Wu's assessment.  (Docket # 21 at 12-15.)
18 However, none of the government's explanations – Plaintiff's lengthy work
19 history, the "late-breaking" allegation of memory loss, the minimal amount of
20 historical treatment for the condition, etc. – formed the actual basis of the ALJ's
21 silence on the issue.  Molina, 674 F.3d at 1120.  Further, it is for the ALJ in
22 evaluating the evidence (and not counsel in after-the-fact briefing) to evaluate the
23 credibility of medical findings.  The ALJ's failure to explain the decision to ignore
24 Dr. Wu's significant evidence and its potential relation to Plaintiff's RFC warrants
25 remand.

### C.     Credibility Determination (Claim 2)

27 Plaintiff claims that the ALJ failed to articulate legally sufficient reasons for
28 rejecting Plaintiff's testimony.  The ALJ found Plaintiff not to be believable in

describing his symptoms because of Plaintiff's "noncompliance" with his diabetic medication regimen, his reported daily activities, and what the ALJ described as "minimal objective evidence" supporting Plaintiff's complaints. (AR 21-22.) When read with an eye on the ALJ's failure to properly evaluate evidence of Plaintiff's brain function issues (as described above), the rejection of Plaintiff's credibility merits further consideration with the agency.

### 1. Relevant Law

Certain disability decisions require an evaluation of a claimant's subjective symptomatic complaints. An ALJ may not "arbitrarily discredit a claimant's testimony." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002). If the ALJ determines that there is objective medical evidence of an underlying impairment that reasonably could cause the alleged pain or symptoms, the ALJ may reject the claimant's testimony regarding the severity of those symptoms if, in the absence of evidence that the claimant is malingering, the ALJ states "specific, clear, and convincing reasons" for rejecting the claimant's testimony. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).

An ALJ may consider a variety of factors in weighing a claimant's believability, including ordinary techniques of credibility evaluation (including "testimony by the claimant that appears less than candid"), information regarding the claimant's courses of treatment, and the claimant's daily activities. Tommasetti, 533 F.3d at 1039. An ALJ may consider whether there is a lack of objective medical evidence supporting a claimant's allegations, but this factor "cannot form the sole basis for discounting" subjective symptom testimony. Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

If a claimant "engages in numerous daily activities involving skills that could be transferred to the workplace, the ALJ may discredit the claimant's allegations upon making specific findings relating to those activities." Id. An ALJ may also consider whether a claimant's statements regarding his or her

symptoms are inconsistent with the those actual activities. However, a claimant "need not vegetate in a dark room" – that is, have only nominal daily activities – to demonstrate eligibility for benefits or the veracity of his or her testimony regarding symptoms. Molina, 674 F.3d at 1113-14.

### 2. **Analysis**

The ALJ did not set forth sufficiently clear and convincing reasons to reject Plaintiff's credibility in describing his symptoms. The ALJ's analysis of Plaintiff's believability was brief and conclusory. The ALJ asserted that Plaintiff's daily activities – Plaintiff "lives with his family, does some housecleaning and cooking, and some socializing," according to the written decision – were "inconsistent with an inability to perform any work activity." (AR 22.) That summary makes neither legal nor factual sense: worse, it does not properly apply clear Ninth Circuit precedent that requires a reasonable analysis of how Plaintiff demonstrated skills on a daily basis that could be transferred to the workplace. Burch, 400 F.3d at 681. Rather, Plaintiff disclosed truly nominal personal activities that were not on their face inconsistent with the physical and mental limitations he described.

Also of concern is the ALJ's failure to consider the evidence of Plaintiff's brain trauma. The ALJ considered Plaintiff not to be believable in describing his symptoms because Plaintiff failed to regularly take his diabetes medication. Yet, proper consideration of the evidence of brain function abnormalities and Plaintiff's reports of increasing memory problems could well cause a trier of fact to conclude that a more benign reason for his noncompliance existed. By giving short shrift to the evidence of Plaintiff's brain injury and the possibility of related memory defects, the ALJ's reliance on Plaintiff's inability to timely take his medication was not a legitimate or convincing basis to find Plaintiff untruthful.

Finally, the ALJ's finding that the objective medical evidence was inconsistent with Plaintiff's alleged symptoms "cannot form the sole basis for discounting" subjective symptom testimony. Burch, 400 F.3d at 681. Because the

Court finds that the ALJ did not identify any other legally sufficient reason, that component of the ALJ's decision cannot by itself support the adverse credibility determination. Accordingly, the ALJ erred in rejecting Plaintiff's believabilty. The Court again has no basis to conclude that the ALJ's error on this issue was harmless, so remand is also warranted on this ground.

## IV. CONCLUSION

The ALJ's decision is VACATED for the reasons stated above. The Court REMANDS the case to the agency for further proceedings.

IT IS SO ORDERED.

DATE: January 23, 2014         _____
                               HON. MICHAEL R. WILNER
                               UNITED STATES MAGISTRATE JUDGE